UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

PATRICK BURRUS and ANNA BURRUS,
individually and as parents of JOSHUA
BURRUS and ██████████;
JOSHUA BURRUS, individually; and
ANNA BURRUS, as natural guardian of
██████████, a minor,

    Plaintiffs,

                                    Case No.: 3:15-cv-00832-HLA-MCR
                                    State Case No.: 16-2015-CA-003440

vs.

STRICK TRAILERS, LLC, a foreign limited
liability company; XTRA LEASE, LLC, a
foreign limited liability company; LIBERO
EXPRESS, INC., a foreign corporation;
ORVIAL STEPHENS; and UNITED
SERVICES AUTOMOBILE ASSOCIATION,

    Defendants.

XTRA LEASE LLC,

    Defendant/Third-Party Plaintiff,

vs.

WABASH NATIONAL CORPORATION,
a foreign corporation, and MIDWEST CARRIER
SYSTEM, INC., a foreign dissolved corporation,

    Third-Party Defendants.
_____

**DEFENDANT/THIRD-PARTY PLAINTIFF
<u>XTRA LEASE LLC'S THIRD-PARTY COMPLAINT</u>**

    Defendant/Third-Party Plaintiff, XTRA Lease LLC ("XTRA Lease"), by and

through the undersigned counsel and pursuant to Fed. R. Civ. P. 14, files this Third-Party

1

Complaint against Wabash National Corporation ("Wabash") and Midwest Carrier System, Inc. ("Midwest"), and states as follows:

## Parties, Jurisdiction and Venue

1. This is an action for monetary damages in excess of $75,000, exclusive of interest and costs.

2. Plaintiffs are citizens of the state of Florida.

3. Defendant, Strick Trailers, LLC, is a Delaware limited liability company, and its sole member, Diamatrix, Inc., is incorporated in Delaware with its principal place of business in Pennsylvania.

4. Defendant, Libero Express, Inc., is an Illinois corporation with its principal place of business in Illinois.

5. Upon information and belief, Defendant, Orvial Stephens, is a citizen of Oklahoma.

6. Defendant/Third-Party Plaintiff, XTRA Lease, is a Delaware limited liability company, and its sole member, XTRA LLC, is a Maine limited liability company, whose sole member is XTRA Companies, Inc., which is incorporated in Delaware with its principal place of business in Missouri.

7. Third-Party Defendant, Wabash, is a Delaware corporation with its principal place of business in Indiana.

8. Third-Party Defendant, Midwest, is a dissolved corporation that was incorporated in Illinois prior to dissolution.

9. United Services Automobile Association ("USAA") is an unincorporated association. Because Plaintiff Patrick Burrus is a member of USAA and resides in Florida, USAA is considered a citizen of Florida for diversity jurisdiction.

10. USAA was fraudulently joined as a defendant in this lawsuit because there is no joint, several or alternative liability between USAA and the diverse defendants, and Plaintiffs' claims against the diverse defendants (negligence and strict liability) have no real connection to the claim against USAA (breach of contract for failure to pay in full uninsured/underinsured motorist benefits).

11. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1332 because the properly joined parties are diverse and the amount in controversy exceeds $75,000, exclusive of interest and costs.

12. This Court also has jurisdiction over this matter pursuant to 28 U.S.C. §1331, as the causes of action alleged against the diverse defendants/third-party defendants necessarily implicate federal law and depend on the resolution of substantial questions of federal law; namely, violations under the Federal Motor Carrier Safety Regulations and the Federal Motor Vehicle Safety Standards. *See* 49 C.F.R. 393.86; *see also* 49 C.F.R. 571.223, 571.224.

13. Venue is proper in this Court because the United States District Court for the Middle District of Florida, Jacksonville Division, is the federal judicial district embracing the Circuit Court of the Fourth Judicial Circuit in and for Duval County, Florida, where this action was originally filed.

14. All conditions precedent to the bringing of this suit have occurred, been waived, or have otherwise been excused.

## General Allegations

15. Plaintiffs filed a lawsuit against XTRA Lease alleging claims for negligence and strict liability arising out of a rear-end collision that occurred on February 23, 2014 ("Accident"). A copy of the Complaint is attached as Exhibit "A".

16. Upon information and belief, the trailer involved in the Accident, trailer number U89916 with VIN 1JJV532D4CL587483, was manufactured by Wabash ("Trailer").

17. Wabash sold the Trailer to XTRA LLC, who is the sole member of XTRA Lease. A copy of the Equipment Purchase Order is attached as Exhibit "B" ("Equipment Purchase Order").

18. At the time of the Accident, XTRA Lease rented the Trailer to Midwest pursuant to a contractual agreement with XTRA Lease. A copy of the Rental Agreement is attached as Exhibit "C" ("Rental Agreement").

## Count I: Common Law Indemnity Against Wabash

19. XTRA Lease reasserts and realleges the allegations in Paragraphs 1 through 18 of its Third-Party Complaint as set forth above.

20. Although XTRA Lease denies liability to Plaintiffs in this action, to the extent it is determined that XTRA Lease is liable to Plaintiffs for their claims against XTRA Lease, said damages are a direct and proximate result of Wabash's negligence in manufacturing the Trailer.

21. XTRA Lease is wholly without fault as to Plaintiffs' claims.

22. Wabash manufactured and sold the Trailer to XTRA LLC, who is the sole member of XTRA Lease. Therefore, a special relationship exists between Wabash and XTRA Lease whereby XTRA Lease may be held vicariously, constructively, technically, or derivatively liable for the alleged damages caused by Wabash's negligence in manufacturing the Trailer.

23. XTRA Lease has sustained and will continue to sustain damages in the form of its attorneys fees, costs and expenses incurred in its defense of Plaintiffs' claims.

24. Any resulting damages proven by Plaintiffs are attributable to defects or deficiencies in the Trailer manufactured by Wabash.

25. XTRA Lease is entitled to and hereby seeks judgment requiring Wabash to indemnify XTRA Lease for all damages that it has incurred and will incur as a result of the claims arising out of the alleged defects or deficiencies in the Trailer manufactured by Wabash, including attorneys fees incurred in defense of said claims.

WHEREFORE, XTRA Lease demands judgment against Wabash for its damages, together with costs of this action, attorneys fees, pre and post judgment interest, and such other relief as this Court deems just and equitable.

### Count II: Contractual Indemnity Against Wabash

26. XTRA Lease reasserts and realleges the allegations in Paragraphs 1 through 18 of its Third-Party Complaint as set forth above.

27. Although XTRA Lease denies liability to Plaintiffs in this action, to the extent it is determined that XTRA Lease is liable to Plaintiffs for their claims against

XTRA Lease, said damages are a direct and proximate result of Wabash's negligence in manufacturing the Trailer.

28. XTRA Lease is wholly without fault as to Plaintiffs' claims.

29. Wabash manufactured and sold the Trailer to XTRA LLC, who is the sole member of XTRA Lease. Therefore, a special relationship exists between Wabash and XTRA Lease whereby XTRA Lease may be held vicariously, constructively, technically, or derivatively liable for the alleged damages caused by Wabash's negligence in manufacturing the Trailer.

30. Pursuant to the Equipment Purchase Order, Wabash agreed to defend, hold harmless, and indemnify XTRA Lease against and for all claims caused by or resulting from Wabash's breach of the Equipment Purchase Order or the negligent, design, engineering, or manufacture of the Trailer purchased under the Equipment Purchase Order. Ex. B.

31. Specifically, Section 6, as modified in Subsection F Modifications to General Terms and Conditions (Part II) of the Equipment Purchase Order states:

> 6. **Indemnification.**
>
> (a) Seller agrees to defend, hold harmless, and indemnify XTRA, its agents, officers, employees, successors and assigns, against and for all liabilities, claims, costs, expenses, and damages which XTRA may at any time suffer or sustain or become liable for by reason of any accidents, damages, or injuries (including injuries resulting in death) either to the persons or property or both, of XTRA or any injured party (other than damage to the equipment itself purchased under this Purchase Order to which Seller's Warranty Terms and Conditions solely apply), caused by or resulting from Seller's breach of this Agreement or the negligent, design, engineering, or manufacture of the equipment purchased under this Purchase Order.

Ex. B.

32. Wabash has breached this contractual indemnification agreement by refusing to defend, hold harmless and indemnify XTRA Lease.

33. As a result of Wabash's breach of its contractual indemnification agreement with XTRA Lease, XTRA Lease has suffered damages, including its costs of defense of Plaintiffs' claims, and has been required to retain the undersigned attorneys and is obligated to pay them a reasonable fee.

34. To the extent that Plaintiffs recover damages against XTRA Lease through judgment or settlement, Wabash is liable to XTRA Lease.

WHEREFORE, XTRA Lease demands judgment against Wabash for its damages, together with costs of this action, attorneys fees, pre and post judgment interest, and such other relief as this Court deems just and equitable.

## Count III: Breach of Contract Against Wabash

35. XTRA Lease reasserts and realleges the allegations in Paragraphs 1 through 18 of its Third-Party Complaint as set forth above.

36. Wabash agreed to manufacture the Trailer subject to the terms and conditions set forth in the Equipment Purchase Order. Ex. B.

37. Wabash expressly and impliedly warranted to XTRA Lease that the Trailer would be free of defects or failures of design, workmanship, materials, or performance and would comply with all applicable laws and standards. Ex. B.

38. Specifically, Section 5(A), as modified in Subsection F Modifications to General Terms and Conditions (Part II), and Section 5(B) of the Equipment Purchase Order states:

> 5. **<u>Comprehensive Warranties</u>**
>
> A. All equipment sold to XTRA hereunder shall be free from defects or failures of design, workmanship, materials, or performance, including the paint system, either latent or patent, for a period of five (5) years from the date of delivery when properly maintained and used in normal services free from accident or collision. This warranty does not cover: (1) parts which are not defective but which may wear out and have to be replaced; (2) alignments or adjustments which are normal maintenance items not caused by a defect in the trailer; or (3) parts which after delivery have been repaired or altered by anyone other than Wabash National's service representative unless, in Wabash National's opinion, such repairs or alterations did not in any way contribute to the defective condition.
>
> Warranty regarding parts, components, equipment, or accessories manufactured by others, including, but not limited to: axles, suspension, wheel hubs, rims, landing gear, etc. will be limited to the supplier specific warranty. Seller will provide XTRA with copies of applicable part, component, equipment, or accessory warranties upon reasonable request. Seller agrees to only administer standard part, component, equipment, or accessory warranties, excluding lights, refrigeration units, and tires. Upon the request of Seller and/or its suppliers, XTRA shall, at Seller's expense, return relevant components to Seller specified locations for evaluation.
>
> **THE WARRANTIES EXPRESSED HEREIN ARE MADE BY WABASH NATIONAL AND SHALL BE IN LIEU OF ANY OTHER WARRANTY, EXPRESSED OR IMPLIED, INCLUDING BUT NOT LIMITED TO, ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR PARTICULAR PURPOSE.** XTRA and Seller agree that Seller's exclusive liability under this warranty or otherwise shall be the repair or replacement, at Seller's option, of any defective goods for which customer gives prompt notice of the defect. Seller shall have no liability for cargo loss, loss of use (unless Seller fails to

> make repairs within the time set forth in subsection E, below) or any other incidental or consequential damages.
>
> B. All equipment sold to XTRA hereunder shall comply with all applicable laws and standards, conform to all final drawings supplied under Section 2 of Part II of this Purchase Order, and satisfy all order specifications furnished by XTRA. Seller acknowledges that XTRA's order specifications describe only selected construction and performance requirements and that they do not supplant the Seller's design or in any way relieve the Seller of responsibility for the quality and fitness of the equipment.

Ex. B (Emphasis in original).

39. Plaintiffs have asserted claims against XTRA Lease arising out of the manufacture of the Trailer, which allegedly resulted in damages to Plaintiffs.

40. Although XTRA Lease denies liability to Plaintiffs in this action, to the extent it is determined that XTRA Lease is liable to Plaintiffs for their claims against XTRA Lease, XTRA Lease is entitled to recover from Wabash because such liability would be the direct result of Wabash's material breach of its contract with XTRA Lease.

41. XTRA Lease has been required to retain the undersigned attorneys and is obligated to pay them a reasonable fee.

42. To the extent it is determined that XTRA Lease is liable to Plaintiffs as a result of Wabash's breach of contract, Wabash is responsible for XTRA Lease's damages, including but not limited to attorneys fees and the costs and expenses associated with investigating and defending Plaintiffs' claims. Ex. B, ¶8.

WHEREFORE, XTRA Lease demands judgment against Wabash for its damages, together with costs of this action, attorneys fees, pre and post judgment interest, and such other relief as this Court deems just and equitable.

### Count IV: Negligence Against Wabash

43. XTRA Lease reasserts and realleges the allegations in Paragraphs 1 through 18 of its Third-Party Complaint as set forth above.

44. Wabash owed a duty to XTRA Lease to use reasonable care in its manufacture of the Trailer, including complying with all applicable laws and standards.

45. Although XTRA Lease denies liability to Plaintiffs in this action, to the extent it is determined that XTRA Lease is liable to Plaintiffs for damages resulting from the manufacture of the Trailer, including but not limited to violations of 49 CFR 393.86, 49 CFR 571.223, and 49 CFR 571.224, Wabash breached its duty of care to XTRA Lease.

46. Any resulting damages proven by Plaintiffs are attributable to defects or deficiencies in Wabash's manufacture of the Trailer.

47. To the extent that Plaintiffs obtain a judgment for damages against XTRA Lease, any such damages will be the direct and proximate result of Wabash's negligence.

48. Further, as a direct and proximate result of Wabash's negligence, XTRA Lease has sustained and will continue to sustain damages in the form of its costs and expenses incurred in its defense of Plaintiffs' claims.

WHEREFORE, XTRA Lease demands judgment against Wabash for its damages, together with costs of this action, pre and post judgment interest, and such other relief as this Court deems just and equitable.

## Count V: Strict Liability Against Wabash

49. XTRA Lease reasserts and realleges the allegations in Paragraphs 1 through 18 of its Third-Party Complaint as set forth above.

50. Wabash is engaged in the business of designing, manufacturing, distributing, and/or selling trailers.

51. Wabash designed, manufactured, distributed, and/or sold the Trailer in the regular course of its business.

52. At the time Wabash designed, manufactured, distributed, and/or sold the Trailer, it expected the Trailer to and the Trailer did reach users and bystanders, including Plaintiffs and Defendants/Third-Party Defendants, without substantial change in the condition that the Trailer was in when it left Wabash's control and possession.

53. Although XTRA Lease denies liability to Plaintiffs in this action, to the extent it is determined that XTRA Lease is liable to Plaintiffs for their claims against XTRA Lease, the Trailer was in a defective condition and unreasonably dangerous when it left Wabash's control, and it was in the same defective condition on the date of the Accident.

54. Although XTRA Lease denies liability to Plaintiffs in this action, to the extent it is determined that XTRA Lease is liable to Plaintiffs for their claims against XTRA Lease, such condition(s) was caused by Wabash's defective design, defective manufacture, inadequate warnings of the dangers of the Trailer, and/or improper and ineffective safety devices used to protect users and bystanders in the vicinity of the Trailer, such as Plaintiffs and Defendants/Third-Party Defendants.

55. Although XTRA Lease denies liability to Plaintiffs in this action, to the extent it is determined that XTRA Lease is liable to Plaintiffs for their claims against XTRA Lease, Wabash knew or should have known of the defective condition of the Trailer prior to the date of the Accident, yet Wabash failed to remedy the unreasonably dangerous condition or take proper precautions to insure against the dangerously defective condition.

56. To the extent that Plaintiffs obtain a judgment for damages against XTRA Lease, any such damages will be the direct and proximate result of Wabash's breaches of duties as assembler, deliverer, distributor, installer, manufacturer, repairer, and/or seller of the Trailer,

57. Further, as a direct and proximate result of Wabash's breaches of duties, XTRA Lease has sustained and will continue to sustain damages in the form of its costs and expenses incurred in its defense of Plaintiffs' claims.

WHEREFORE, XTRA Lease demands judgment against Wabash for its damages, together with costs of this action, pre and post judgment interest, and such other relief as this Court deems just and equitable.

### Count VI: Common Law Indemnity Against Midwest

58. XTRA Lease reasserts and realleges the allegations in Paragraphs 1 through 18 of its Third-Party Complaint as set forth above.

59. Although XTRA Lease denies liability to Plaintiffs in this action, to the extent it is determined that XTRA Lease is liable to Plaintiffs for their claims against

XTRA Lease, said damages are a direct and proximate result of Midwest's negligence as lessee of the Trailer.

60. XTRA Lease is wholly without fault as to Plaintiffs' claims.

61. XTRA Lease leased the Trailer to Midwest and therefore a special relationship exists between the two parties whereby XTRA Lease may be held vicariously, constructively, technically, or derivatively liable for the alleged damage caused by Midwest's negligence in maintaining the Trailer.

62. XTRA Lease has sustained and will continue to sustain damages in the form of its attorneys fees, costs and expenses incurred in its defense of Plaintiffs' claims.

63. Any resulting damages proven by Plaintiffs are attributable to Midwest's negligence in maintaining the Trailer.

64. XTRA Lease is entitled to and hereby seeks judgment requiring Midwest to indemnify XTRA Lease for all damages that it has incurred and will incur as a result of the claims arising out of Midwest's negligence as lessee of the Trailer, including attorneys fees incurred in defense of said claims.

WHEREFORE, XTRA Lease demands judgment against Midwest for its damages, together with costs of this action, attorneys fees, pre and post judgment interest, and such other relief as this Court deems just and equitable.

### **Count VII: Contractual Indemnity Against Midwest**

65. XTRA Lease reasserts and realleges the allegations in Paragraphs 1 through 18 of its Third-Party Complaint as set forth above.

66. Although XTRA Lease denies liability to Plaintiffs in this action, to the extent it is determined that XTRA Lease is liable to Plaintiffs for their claims against XTRA Lease, said damages are a direct and proximate result of Midwest's negligence as lessee of the Trailer.

67. XTRA Lease is wholly without fault as to Plaintiffs' claims.

68. XTRA Lease leased the Trailer to Midwest and therefore a special relationship exists between the two parties whereby XTRA Lease may be held vicariously, constructively, technically, or derivatively liable for the alleged damage caused by Midwest's negligence in maintaining the Trailer.

69. Pursuant to the Rental Agreement, Midwest agreed to defend, hold harmless, and indemnify XTRA Lease from and against any and all claims in any way arising out of or incident to the lease, or the use, possession, maintenance, control or condition of the equipment during the lease. Ex. C.

70. Specifically, Section 11(A) and (B) of the Rental Agreement states:

**(A) LESSEE HEREBY AGREES TO INDEMNIFY, DEFEND, AND HOLD HARMLESS THE INDEMNIFIED PARTIES . . . FROM AND AGAINST ANY AND ALL CLAIMS, LOSSES, LIABILITIES, OBLIGATIONS AND EXPENSES (INCLUDING REASONABLE ATTORNEYS' FEES) . . . IN ANY WAY ARISING OUT OF OR INCIDENT TO THE LEASE, OR THE USE, POSSESSION, MAINTENANCE, CONTROL OR CONDITION OF THE EQUIPMENT DURING THE LEASE, REGARDLESS OF WHETHER SUCH CLAIMS WERE CAUSED IN WHOLE OR IN PART BY THE NEGLIGENCE OF ANY OF THE INDEMNIFIED PARTIES, AND INCLUDING, WITHOUT LIMITATION, ANY AND ALL CLAIMS ARISING FROM OR INCIDENT TO: (I) THE ACTS OR OMISSIONS OF LESSEE, LESSEE'S AGENTS OR LESSEE'S ASSIGNEES; (II) THE PERFORMANCE, BREACH, OR DEFAULT OF THE LEASE BY LESSEE, OR THE ENFORCEMENT OF ANY OF THE TERMS OF THE LEASE BY**

**XTRA LEASE; (III) THE DEATH OR INJURY TO ANY PERSON; (IV) DAMAGE TO ANY PROPERTY; (V) DAMAGE TO, OR ANY DAMAGE OR INJURY RESULTING FROM, ANY CARGO PLACED ON OR CONTAINED IN THE EQUIPMENT; (VI) THE VIOLATION OR ALLEGED VIOLATION OF ANY APPLICABLE LAW, INCLUDING, WITHOUT LIMITATION, ANY FAILURE OR ALLEGED FAILURE TO USE, OPERATE, MAINTAIN OR CONTROL THE EQUIPMENT IN COMPLIANCE WITH APPLICABLE LAW . . .**

**(B) FOR PURPOSES OF THE STANDARD TERMS AND CONDITIONS, THE TERM "INDEMNIFIED PARTIES" SHALL REFER TO (I) XTRA LEASE, ITS AFFILIATES AND ITS AND THEIR SUCCESSORS, ASSIGNS, EMPLOYEES, OFFICERS, DIRECTORS, LICENSORS AND AGENTS, AND (II) XTRA LEASE'S THIRD-PARTY LICENSOR OF THE TRAILER TRACKING UNIT AND SOFTWARE AND THE UNDERLYING WIRELESS SERVICE CARRIER SUPPLYING SERVICES TO XTRA LEASE'S THIRD-PARTY LICENSOR OF THE TRAILER TRACKING SOFTWARE, AND THEIR AFFILIATES, SUCCESSORS, ASSIGNS, EMPLOYEES, OFFICERS, DIRECTORS, AND AGENTS.**

Ex. C (Emphasis in original).

71. Midwest has breached this contractual indemnification agreement by refusing to defend, hold harmless and indemnify XTRA Lease.

72. As a result of Midwest's breach of its contractual indemnification agreement with XTRA Lease, XTRA Lease has suffered damages, including its costs of defense of Plaintiffs' claims, and has been required to retain the undersigned attorneys and is obligated to pay them a reasonable fee.

73. To the extent that Plaintiffs recover damages against XTRA Lease through judgment or settlement, Midwest is liable to XTRA Lease.

WHEREFORE, XTRA Lease demands judgment against Midwest for its damages, together with costs of this action, attorneys fees, pre and post judgment interest, and such other relief as this Court deems just and equitable.

### Count VIII: Breach of Contract Against Midwest

74. XTRA Lease reasserts and realleges the allegations in Paragraphs 1 through 18 of its Third-Party Complaint as set forth above.

75. Midwest leased the Trailer from XTRA Lease subject to the terms and conditions set forth in the Rental Agreement. Ex. C.

76. Pursuant to the Rental Agreement, Midwest agreed to maintain the Trailer in good condition and free from defects.

77. Specifically, Section 8(b) of the Rental Agreement states:

**8. MAINTENANCE AND USE OF EQUIPMENT.**
\*\*\*
(b) **Lessee** is responsible for the condition, operation, inspection and maintenance of the Equipment during the Lease. **Lessee** shall maintain the Equipment, at **Lessee's** own expense and in accordance with the Repair Standards, the Equipment in good condition, free from defects and fit for its designated purpose. **Lessee** shall return all Equipment to **XTRA Lease** in the same condition as when received, normal wear excepted.

Ex. C (Emphasis in original).

78. Pursuant to the Rental Agreement, Midwest further agreed to comply with all federal and state safety requirements.

79. Specifically, Section 17(b) of the Rental Agreement states:

**17. LAWS, RULES AND REGULATIONS.**
\*\*\*
(b) **Lessee** shall be solely responsible for (i) complying with Applicable Law, including, without limitation, all federal and state anti-pollution and environmental, transportation compliance, safety, and inspection

requirements; (ii) any modification required to be made to the Equipment to comply with Applicable Law . . .

Ex. C (Emphasis in original).

80. Pursuant to the Rental Agreement, Midwest agreed not to assign or sublease the Trailer without the prior consent of XTRA Lease. Ex. C.

81. Specifically, Section 19 of the Rental Agreement states:

**19. ASSIGNMENT & SUCCESSORS. Lessee** shall not assign or sublease any right or interest in the Equipment, any Lease or any agreement that results therefrom, without the prior written consent of **XTRA Lease**. . . Notwithstanding anything to the contrary contained herein, the Lease and the Standard Terms and Conditions shall inure to the benefit and be binding upon the parties, their heirs, successors, administrators, executors and assigns.

Ex. C (Emphasis in original).

82. Upon information and belief, Midwest assigned the Lease to Libero Express, Inc. without the prior written consent of XTRA Lease.

83. Plaintiffs have asserted claims against XTRA Lease arising out of the maintenance of the Trailer, which allegedly resulted in damages to Plaintiffs.

84. Although XTRA Lease denies liability to Plaintiffs in this action, to the extent it is determined that XTRA Lease is liable to Plaintiffs for their claims against XTRA Lease, XTRA Lease is entitled to recover from Midwest because such liability would be the direct result of Midwest's material breach of its contract with XTRA Lease.

85. XTRA Lease has been required to retain the undersigned attorneys and is obligated to pay them a reasonable fee.

86. To the extent it is determined that XTRA Lease is liable to Plaintiffs as a result of Midwest's breach of contract, Midwest is responsible for XTRA Lease's

damages, including but not limited to attorneys fees and the costs and expenses associated with investigating and defending Plaintiffs' claims. Ex. C.

WHEREFORE, XTRA Lease demands judgment against Midwest for its damages, together with costs of this action, attorneys fees, pre and post judgment interest, and such other relief as this Court deems just and equitable.

### Count IX: Negligence Against Midwest

87. XTRA Lease reasserts and realleges the allegations in Paragraphs 1 through 18 of its Third-Party Complaint as set forth above.

88. Midwest owed a duty to use reasonable care in its maintenance of the Trailer, including complying with all applicable laws and standards.

89. Although XTRA Lease denies liability to Plaintiffs in this action, to the extent it is determined that XTRA Lease is liable to Plaintiffs for their claims against XTRA Lease, Midwest breached its duty of care to XTRA Lease.

90. Any resulting damages proven by Plaintiffs are attributable to defects or deficiencies in Midwest's maintenance of the Trailer.

91. To the extent that Plaintiffs obtain a judgment for damages against XTRA Lease, any such damages will be the direct and proximate result of Midwest's negligence.

92. Further, as a direct and proximate result of Midwest's negligence, XTRA Lease has sustained and will continue to sustain damages in the form of its costs and expenses incurred in its defense of Plaintiffs' claims.

WHEREFORE, XTRA Lease demands judgment against Midwest for its damages, together with costs of this action, pre and post judgment interest, and such other relief as this Court deems just and equitable.

### Demand for Jury Trial

Defendant/Third-Party Plaintiff, XTRA Lease LLC demands trial by jury of all issues so triable as of right.

DATED: July 24, 2015.                Respectfully submitted,

/s/ Autumn P. George
SARAH M. BAGGETT, Fla. Bar No. 662526
AUTUMN P. GEORGE, Fla. Bar No.: 78189
Galloway, Johnson, Tompkins, Burr & Smith, P.L.C.
620 East Twiggs Street, Suite 303
Tampa, FL  33602
Tel: (813) 977-1200
Fax: (813) 977-1288
tampaservice@gallowayjohnson.com
sbaggett@gallowayjohnson.com
ageorge@gallowayjohnson.com
*Counsel for Defendant/Third-Party Plaintiff, XTRA Lease LLC*

### Certificate of Service

I hereby certify that a true and correct copy of the foregoing was served by electronic filing (unless noted otherwise) on July 24, 2015 on all counsel or parties of record on the Service List below.

/s/ Autumn P. George
Signature of Filer

**SERVICE LIST**

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished to the following parties, via electronic mail, on July 24, 2015:

| | |
|---|---|
| Robert J. Link, Esq.<br>Stephen J. Pajcic, III, Esq.<br>Pajcic & Pajcic, P.A.<br>One Independent Drive, Suite 1900<br>Jacksonville, Florida 32202-5013<br>Tel: (904) 358-8881<br>Fax: (904) 354-1180<br>Email: bob@pajcic.com and melanie@pajcic.com<br>*Counsel for Plaintiffs, ▇▇▇▇▇▇▇, Joshua Burrus, Anna Burrus and Patrick Burrus* | Katya M. Rehders, Esq.<br>Christopher W. Wadsworth, Esq.<br>Wadsworth & Huott, LLP.<br>14 N.E. 1st Avenue, 10th Floor<br>Miami, FL 33132<br>Tel: (305) 777-1000<br>Fax: (305) 777-1001<br>Email: KR@wadsworth-law.com, cw@wadsworth-law.com, jenniferc@wadsworth-law.com, and tamic@wadsworth-law.com<br>*Counsel for Defendants, Orvial Stephen & Libero Express, Inc.* |
| Richard M. Dunn, Esq.<br>Cozen O'Connor<br>200 South Biscayne Boulevard, Suite 4410<br>Miami, FL 33131<br>Tel: (305) 704-5950<br>Fax: (305) 704-5955<br>Email: rdunn@cozen.com<br>and<br>Jeptha F. Barbour, Esq.<br>Post Office Box 447<br>Jacksonville, FL 32201<br>Tel: (904) 398-0900<br>Fax: (904) 399-8440<br>Email: jbarbour@marksgray.com and dboss@marksgray.com<br>*Counsel for Defendant, Strick Trailers, LLC* | Christopher D. Ritchie, Esq.<br>Nicolle Von Roenn, Esq.<br>Boyd & Jenerette, P.A.<br>201 North Hogan Street, Suite 400<br>Jacksonville, FL 32202<br>Tel: (904) 353-6241<br>Fax: (904) 493-3742<br>efiling@boyd-jenerette.com<br>*Counsel for Defendant, United Services Automobile Association* |